The Empire Land & Canal Company, Appellant, v.
Engley et al., Appellees.

1. Mechanics' Lien Act, 1881.

A purchaser or encumbrancer of property upon which a mechanic's lien
is filed is chargeable with notice thereof by virtue of the mechanics'
lien statute itself, without the filing of a notice of *lis pendens.* The
enforcement of mechanics' liens should be favored by a liberal con-
struction of the statute.

2. Assignment of Judgment.

An assignment of a judgment, not in good faith, does not convey title
to the assignee.

3. Possession and Title.

Neither the possession of nor the legal title to the land upon which the
mechanics' lien is claimed is necessarily conclusive of the mechanic's
or laborer's right to a lien upon such land or upon the structure
which he has constructed thereon.

*Appeal from the District Court of Rio Grande County.*

Action to remove cloud from title to real property.    Judg-
ment dismissing complaint.    Plaintiff appeals.

Messrs. J. P. Brockway, Holbrook & Brown and Tel-
ler & Orahood for appellant.

Messrs. C. A. Johnson, D. V. Burns, Adair Wilson,
and J. C. Helm, for appellees.

Mr. Justice Elliott delivered the opinion of the court.

The Empire Land & Canal Company, a corporation, was
plaintiff below.    Engley and Smith were defendants.    The
litigation arose as follows:

During the latter part of the year 1882, one A. T. Clark,
also the defendant Smith and one John M. Wilson, perform-
ed certain work in and about the construction of a certain irri-
gating canal in Rio Grande county.    Plaintiff claims that

the work was performed for the State Land No. 2 Canal Company, a duly organized corporation, and that the plaintiff, "The Empire Land & Canal Company" is the successor of said State Land Company. Defendants claim that the work was performed for one J. S. Stanger, and that Stanger was the owner and held the title to the property on which the work was performed.

In December, 1882, Clark filed notice claiming a lien upon said irrigating canal on account of the work done by him, directing his notice to the State Land No. 2 Canal Company. Smith & Wilson also filed notice, claiming a lien upon the same property on account of their work, directing their notice to Stanger, but not to said State Land Company. Clark assigned his lien to Smith & Wilson, and within the six months required by the statute they commenced suit to foreclose both liens, making Stanger the only party defendant.

In April, 1884, Smith & Wilson obtained a decree foreclosing said liens; the judgment was for the sum of $6,579.54 on account of the lien assigned by Clark, and the further sum of $2,820.49 on their own lien.

In 1886, in pursuance of the decree of foreclosure, the property described therein was sold by the sheriff; the defendant Engley became the purchaser, and afterwards obtained the sheriff's deed therefor. Afterwards Engley by quitclaim deed conveyed the property to his codefendant Smith. Defendants rely upon the title thus acquired.

The legal title to the irrigating canal at and before the time of filing the liens by Clark and by Smith & Wilson, was in J. S. Stanger, and so continued until after the foreclosure suit was commenced.

On July 6, 1883, less than a month after the suit was commenced, Stanger conveyed the canal property to the State Land No. 2 Canal Company.

In its complaint plaintiff charges that the decree of foreclosure in favor of Smith & Wilson is invalid, and that the deed purporting to convey to Engley a portion of said canal, though void, constitutes a cloud on plaintiff's title, and

prays that such deed may be delivered up and canceled, and that plaintiff be declared the owner of the canal property, the same as if the sheriff's deed had never been made.

1. In support of plaintiff's position it is contended, *first*, that the State Land No. 2 Canal Company was in possession of the land when the work was done by Clark, and by Smith & Wilson; that it continued in possession when their liens were filed, and was in possession when suit was commenced to foreclose said liens; that said canal company was not made a party to said foreclosure suit; and that no notice of the pendency of said suit was filed with the recorder of the proper county, as provided by statute.

Conceding that the State Land Company was in possession of the property and the equitable owner thereof when the work was done, and that its possession so continued until after the foreclosure suit was commenced, it nevertheless appears that the title to the property was in Stanger. About a month after the commencement of the foreclosure suit, Stanger deeded the property to the State Land Company, of which he was president at the time. The liens were then on file in the recorder's office, and Stanger had been served with summons to foreclose the same. Stanger as grantor having actual notice of the existence of the liens and of the pendency of the action to enforce them, his grantee, the corporation of which he was president at the time, must be held to have had actual notice thereof.

It is urged by appellees' counsel that the plaintiff, the Empire Land & Canal Company, must also be held to have had actual notice of the liens and of the pendency of the suit to enforce them, since Mr. Henry, who became the president and general manager of the plaintiff company upon its organization, was the vice president of the State Land Company when it received its deed from Stanger. But it seems that the State Land Company after acquiring title from Stanger executed its deed of trust conveying the property to secure a loan from the Colorado Loan & Trust Company, another corporation, and that under such trust deed the property was

sold on October 21, 1884, to Cyrus Strong, Jr., and that on the next day Strong conveyed the property to the present plaintiff, The Empire Land & Canal Company. It is strenuously insisted by appellant's counsel that Strong and The Colorado Loan & Trust Company were innocent purchasers of said property without any notice of said liens.

The distinction between the term *lis pendens* and the phrase *notice of lis pendens* is not always observed. The former is a common law term, the latter is regulated by statute. At common law, the general rule is that all persons are bound to take notice at their peril of suits affecting the title to property; and purchasers *pendente lite*, either with or without notice, take no better title than their grantor shall be adjudged to have. The hardship of this rule in cases of certain equitable liens and secret trust estates has led to the adoption of statutes providing for the registry or recording of notice of the pendency of certain actions.

In cases like the present, section 36 of the Code, commonly called the *lis pendens* statute, must be construed with the provisions of the mechanics' lien statute. Section 36 provides for the filing of a *notice of lis pendens* in actions affecting the title to real property, and further declares that "from the time of filing such notice only shall the pendency of the action be considered notice to a purchaser or incumbrancer of the property affected thereby."

The act of 1881, under which the Smith & Wilson foreclosure suit was commenced, provided for filing a certain kind of notice or statement in the office of the clerk and recorder of the proper county, claiming a lien upon the property described in such notice; and that upon the filing of such notice the claimant should have a lien upon such land and structure. Session Laws, 1881, p. 168.

Section 12 of said act provided that such lien should not hold the property longer than six months after filing the claim for the same, *unless* an action should be commenced within that time to enforce the same.

Section 14 provided for entering satisfaction of said lien

in the clerk's office whenever such claim of lien should have been satisfied, or whenever it should have been adjudged invalid ; and further provided heavy penalties against the claimant in case he should neglect or refuse to make or cause to be made such entry of satisfaction within reasonable time after request of any person interested in the property affected by such lien.

Considering the design of these statutes, we are of the opinion that it is not necessary to file a notice of *lis pendens* in an action brought to enforce a mechanic's lien. The mechanics' lien statute prescribes the kind of notice to be filed by the claimants of such liens, and no additional notice is necessary. The notice prescribed by section 2 of the statute is ample for the protection of purchasers or incumbrancers dealing with the property affected by such liens. It is true, the statute provides that such lien shall not hold the property for a longer period than six months, *unless* an action shall within that time be commenced to enforce the same. But this is equivalent to an affirmative declaration that the lien *shall hold the property for a longer period than six months where an action is commenced within that time to enforce the same ;* besides, section 14 provides how such liens shall be discharged of record. It follows, therefore, that a party desiring to purchase or otherwise deal with real property has only to consult the records of the proper county. If he finds that a mechanic's lien has been recorded, he is at once put upon inquiry, and he must ascertain whether any suit has been commenced within the statutory period for enforcing the same, or whether the same has been satisfied or otherwise legally discharged. Thus a purchaser or incumbrancer of property upon which a mechanic's lien is filed is chargeable with notice thereof by virtue of the mechanics' lien statute itself, without the filing of a notice of *lis pendens*.

Numerous decisions relating to *lis pendens*, and notice of *lis pendens*, have been considered.

In *Grattan v. Wiggins*, 23 Cala. 39, it is said : " Section 27 of the Practice Act " (corresponding to our section 36)

"applies only to actions pending, and not to judgments and decrees rendered, which at common law, it would seem, were notice to all persons."

In *Long v. Neville*, 29 Cala. 135, it was held that, "The notice of *lis pendens* does not apply to the action of ejectment." Sanderson, Chief Justice, delivering the opinion of the court (two justices dissenting), said: "The twenty-seventh section only applies to actions which operate directly upon the title and by the result of which some change as to the title is wrought; examples of which are found in actions for the condemnation of real estate, and the specific performance of contracts relating thereto, for the foreclosure of mortgages, or other liens, and the like."

The examples thus stated in *Long v. Neville* may, perhaps, be taken to indicate that mortgages and liens generally are within the terms of the *lis pendens* statute. But such was not the point decided in the case; and it is by no means certain that the court intended to say more than that in actions upon certain kinds of mortgages and certain kinds of liens it would be necessary to file notice of *lis pendens;* that is, in actions like condemnation proceedings and cases of specific performance where there is no previous public record of plaintiff's claim of title. In an action upon a mortgage, vendors' lien, or other equitable interest in real property, not recorded, there would be the strongest reason for requiring the filing of a notice of *lis pendens*. *Bensley v. Mountain Lake Water Co.*, 13 Cala. 306; *Todd v. Outlaw*, 79 N. C. 235.

In the case of *Reeve v. Kennedy*, 43 Cala. 643, it was held that in an action to enforce the lien of a tax by the sale of the property it is not necessary to file a notice of *lis pendens*. The court in its opinion says:

"The assessment of lands, and the lien which it creates, are public matters of record, of which all purchasers are bound to take notice; and when a purchaser buys land which is subject to an existing lien for taxes, he must see at his peril that the taxes are paid; and if he neglects this duty he takes the hazard of a judgment against the land, the lien of which,

by operation of law and by relation, will antedate his pur-
chase. If the rule were otherwise, it would be necessary in
an action to foreclose a tax lien to bring in as defendants all
purchasers and incumbrancers subsequent to the assessment
and prior to the commencement of the action, and the effect
of the judgment in a large number of cases would be practi-
cally defeated by secret unrecorded conveyances which were
unknown to the district attorney. It was to obviate the ne-
cessity for this, that these provisions were intended, making
the judgment lien take effect by relation from the date of
the assessment. No notice of *lis pendens* is therefore neces-
sary in this class of actions."

No reason is perceived why the doctrine of the Reeve-Ken-
nedy case should not be extended to mechanics' lien cases.
The law provides that taxes regularly assessed shall consti-
tute a lien upon the land; the lien thus created is a matter
of public record; and parties dealing with the land must
take notice of such lien at their peril. So a mechanic's lien
is necessarily a matter of public record. The statute provides
that a person performing work or labor upon real property
may have a lien thereon by making the same a matter of pub-
lic record, that is, by recording his notice and claim of lien.
He can have no mechanic's lien without thus recording it;
and when he has complied with the statute parties dealing
with the land must take notice at their peril of his lien thus
recorded. The fact that the lien is created in the one case
for the purpose of securing public rights, and in the other
for the purpose of securing private rights, should not, in our
judgment, make any difference in the construction of the
statute.. It has always been the policy of the law as declared
by this court to. favor the enforcement of mechanics' liens by
a liberal construction of the statute. The laborer is worthy
of his hire. See *Williams v. Uncompahgre Canal Co.*, 13
Colo. 478, and cases there cited; also, *Cannon v. Williams*, 14
Colo. 23, and authorities there cited.

Our attention has not been called to any decision, nor have
we been able to find any case, in which a party recovering

judgment for the enforcement of a mechanic's lien has been deprived of his security merely by reason of his failure to file a notice of *lis pendens*.

2. The plaintiff claims title to the premises in controversy upon still another ground : It claims to have purchased and obtained an assignment of the judgment foreclosing the lien in favor of Smith & Wilson against Stanger before the sale of the property thereunder to Engley.   Defendants deny the validity of such purchase and assignment.

There was testimony to the effect that Wilson of said firm of Smith & Wilson on July 10, 1885, executed an assignment of the judgment to the plaintiff corporation ; but no record was made of the transaction upon the books of the corporation.   The purchase was not made by the directors of the corporation, nor by anyone authorized by them to make it.   The purchase was negotiated by Mr. Henry, president of the plaintiff corporation.   According to his own testimony, he gave for the judgment only $300 in cash, $400 in two acceptances, payable in 5 or 10 days, and his personal note for $1,000, payable in two or three months.   The acceptances at the time of the trial of this cause in April, 1889, had not been paid; and the $1,000 note had never been presented for payment.

When a single partner for the sum of $1,700,—$300 in cash and the balance in promises,—assigns a mechanic's lien judgment, standing in the name of his firm, amounting with interest to at least $10,000, such judgment being secured upon irrigating canal property shown to be worth $25,000 or $30,000, and the assignor makes no demand for the balance of the purchase money for nearly four years, the good faith of the transaction may well be doubted.   Besides, in this case, the evidence tended to show that there had been an open rupture between Smith and Wilson, and that they had broken off business relations months before Wilson undertook the sale and transfer of the judgment, that Wilson no longer had any interest in the judgment or authority to dispose of the same, and that Henry knew of the rupture between Smith and

Wilson when he procured the assignment. Under such circumstances we cannot say the trial court erred in finding against the plaintiff's claim under the assignment of the Smith & Wilson judgment.

It is unnecessary, in this case, to determine whether Smith and Wilson were or were not partners, as between themselves, in respect to the judgment of foreclosure. Wilson did not assume to collect and satisfy such judgment. He undertook to sell and assign it,—not his interest in it, but the whole of it,—and that for an exceedingly small part of its value as a valid judgment. It is unnecessary, also, to consider what power or authority a single partner, either before or after dissolution, may have over an unsatisfied judgment standing in the name of the partnership, since, under the circumstances disclosed by the evidence, it is clear that the trial court did not err in deciding that plaintiff did not acquire such an interest in the judgment of foreclosure as to render Smith's title thereto and thereunder absolutely void, as alleged, nor such an interest as plaintiff was bound to prove in order to succeed in this action.

3. It is urged that the sheriff's deed to Engley was prematurely issued, the time for redemption not having expired. It is also insisted that *palpable error* was committed in the foreclosure suit of Smith & Wilson against Stanger; that the judgment in such action, and the title of defendants based thereon, are invalid; and that, as plaintiff was not a party to such suit, it may have relief against the same. These considerations might have weight in a proper case, but not in this. The entire scope of this action is to remove a supposed cloud from the title to real property; no other relief is demanded; nor is any other relief warranted by the facts pleaded.

Plaintiff claims full and complete ownership of the property in controversy, and asserts that defendants have no interest therein. The gravamen of the complaint is, that the title deed under which defendants claim is *void*. The complaint is not in the nature of a bill to redeem. The action was in-

stituted and carried through the trial court on the theory that Smith & Wilson had no lien or claim of any kind, nor for any amount, upon the premises in controversy.   The complaint does not ask for an accounting, nor does it contain an offer to redeem on any terms, or under any circumstances.

It is true, that neither plaintiff, nor its immediate grantors, were made parties to the Smith & Wilson foreclosure suit; but that fact does not prove that Smith & Wilson had no equities in such suit.   They brought their suit in a court of competent jurisdiction, and obtained judgment against Stanger through whom plaintiff claims title.   That judgment, so far as we are advised, stands unreversed and unappealed from.   The evidence in that case is not preserved in this record; hence it cannot be said that the suit was without substantial merit, even though plaintiffs may, also, have equities upon which to contest, in a proper action, its binding effect, either in whole or in part, as to them.

We are not prepared to say that the possession of the premises in controversy by the original owners, Leese, Bingle & Davis, or by Stanger, or by the State Land No. 2 Canal Company, or by Strong, or by the plaintiff in this case, or the want of possession by Smith & Wilson, or by defendants in this case, or either of them, at any particular time, necessarily renders the mechanics' liens, or the proceedings to enforce the same, void; nor are we prepared to say that such liens are void *in toto* under section 1 of the act of 1881, merely because Stanger did not hold the legal title to the premises when the work was first commenced by the lien claimants. *Non constat*, he may have had some kind of interest, tenancy, or claim in or to such premises.   Neither the possession of, nor the legal title to, the land upon which a mechanics' lien is claimed is necessarily conclusive of the mechanic's or laborer's right to a lien upon such land or upon the structure which he has constructed thereon.   Further than this, we need not express an opinion as to the meaning of said section 1, the same having been repealed by the act of 1883: 2 Mills' An. Stats. § 2898.

Several of the assignments of error are not based upon any exceptions in the record. From the foregoing view of the case, further discussion is unnecessary. Our conclusion is, that the action being brought and prosecuted solely for the purpose of removing a supposed cloud from the title to the premises in controversy, the district court did not err in dismissing the complaint.

The judgment is accordingly affirmed.

*Affirmed.*