Thomson, P. J.
Parsons, Martin & Hall brought suit to enforce a mechanics’ lien against the appellees, making the appellants, who were also lien claimants, as sub-contractors, parties defendant. The appellants severally answered, and filed cross-complaints, setting forth the facts constituting their liens, and praying judgments enforcing the same.
On the 15th day of February, 1896, Mrs. W. H.. S. Newcomb was the owner of certain lots in the city of Denver, and, upon that date she, together with the appellee, W. H. Newcomb, her husband, entered into a contract in writing with the appellee, Walter H. King, for the construction of a dwelling house upon those lots. By the terms of the contract, King was to construct and complete the building by the 20th of July, 1896,furnishing all necessary materials, and was to be paid for the work, by the Newcombs, $3,825 in money, and 105,000 shares of the capital stock of The Buffalo, New York & Cripple Creek Cold Mining Company. Payments were to be made as follows: The sum of $600 in money when the first floor joists should be in place; the sum of $900 in money when the second floor joists should be in place; the sum of $1,100 when the roof should be on; 40,000 shares of the stock when the brown mortar should be on, and. the remainder of the contract price — money and stock —when the building should be accepted as complete by the architect.
Two weeks after the execution of the contract, King commenced work upon the house, and the building was completed on the 11th day of January, 1897. At the time of its completion, King had received of the contract price $2,700 in cash, and a considerable quantity of mining- stock. Of the money he received, he had disbursed $2,658.91 for work and materials, but the claims of the appellants were unpaid; and *268 they severally filed their lien statements. The ease having come on for trial, at the conclusion of the evidence, on motion of the Newcombs, the court entered judgment as of nonsuit against the appellants. The grounds of the motion were that the mechanics ’ lien law of May 3, 1893, under which the liens were asserted, was unconstitutional and void, and that the proceedings of the appellants in attempting to acquire their liens were not in conformity with the provisions of that law.
Section 1 of the act of 1893 provides that mechanics, material men, contractors, sub-contractors, builders and all persons of every class performing labor upon, or furnishing materials to be used in, the construction, alteration, addition to, or repair of, any building, etc., shall have a lien upon the property on which they have rendered service or bestowed labor, or for which they have furnished material, for the value of such service, labor or material, whether at the instance of the owner or of any other person acting on his authority or under him, as agent, contractor or otherwise; that every contractor, etc., shall be held to be agent of the owner for the purpose of the act; that in case of a contract between the owner and the contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons except the contractor, to the extent of the whole contract price, and after all such liens are satisfied, then as a lien for the balance in favor of the contractor. That all such contracts shall be in writing when the amount to be paid thereunder exceeds $500, and shall be subscribed by the parties thereto; that, such contract, setting forth the names of all the parties thereto, and a description of the premises to be affected thereby, a statement of the general character of the work to be done, and the full amount to be paid thereundér, together with the times *269 or stages of the work for making payments, shall, before the work is commenced, be filed for record in the office of the recorder of the county in which the property is situate; and that in case the contract is not so filed, the labor done and materials furnished by all persons except the contractor before the contract is filed, shall be deemed to have been done at the personal instance of the owner, and such persons shall have a lien for the value thereof.
Section 2 provides that no part of the contract price shall, by the terms of any such contract, be made payable, nor shall the same .or any part thereof be paid, in advance of the commencement of the work, but the contract price shall be made payable in installments, or upon estimates, at specified times after the commencement of the work, or, on the completion.of the whole work; provided, that at least 15 per cent, of the whole contract price shall be made payable at least thirty-five days after the final completion of the contract; that no payment made before it is due by the terms of the contract, shall be valid for the purpose of defeating, diminishing or discharging any lien in favor of any person except the contractor; but as to such liens, any such payment shall be deemed not to have been made, and shall be applicable to such liens, notwithstanding the contractor to whom it was paid may afterwards abandon his contract, or become indebted to such owner for damages or otherwise, for nonperformance of his contract, or otherwise; that, as to all liens except that of the contractor, the whole contract price shall be payable in money; that in case such contracts do not conform substantially to the provisions of the section, the labor done and materials furnished by all persons except the contractor shall be deemed to have been done and furnished at the personal instance and request of the persons contracting with the contractor, and they *270 shall have a lien for the value thereof; that any of the persons mentioned in section 1, except the contractor or his agent, may at any time give to the owner or agent a written notice that they have performed labor, or furnished material, or both, to the contractor, or any person acting by the authority of the owner, or that they have agreed to and will do so, stating in general terms the kind of labor or material, and the name of the person to or for whom the same was, or is to be, done or furnished, and the amount in value, as near as may be, of that already done or furnished, and of the .whole work agreed to be done or furnished, which notice shail not be invalid by reason of any. defect of form, provided it is sufficient to inform the reputed owner of the substantial matters mentioned, or to put him on inquiry as to such matters ; that upon such notice being given, it shall be the duty of the person who contracted with the contractor to withhold from his contractor, or from any other person acting under the owner, and to whom by the-notice the labor and material have been, or have been agreed to be, furnished, sufficient money due or that may become due to such contractor or other person, to answer such claim, or any lien that may be filed therefor.
The objections to the foregoing provisions are that they undertake to, and do, interfere with the right of the citizen to contract as his interests may demand, and make him liable to penalties if he exercise his privilege of disposing of any property he may have to a contractor for the erection of a house; that they undertake to make out of the contractor, who is an adverse party to the owner of the property, an agent for the owner, when the interests of the two are adverse; that they constitute an unreasonable restraint on the right of private contract, and that, therefore, they are repugnant to the provisions of the *271 constitution guaranteeing to citizens the right of acquiring, possessing and protecting property, inhibiting the enactment of laws impairing the obligation of contracts, or retrospective in their operation, and forbidding the' depriving of any person of life, liberty or property, without due process of law.
The question as to the constitutionality of those sections was before the supreme court in the recently decided case of Joralmon v. McPhee, 31 Colo. 26, 71 Pac. 419, but the court did not pass upon their validity, holding that the rights of the parties before it were not dependent upon them, and that the remainder of the act contained sufficient to entitle those parties to their liens, and might stand regardless of the sections which were attacked. The decision of the constitutional questions there presented would have been a source of gratification to us, because, as to such questions, final jurisdiction resides in that court. But in this case, the provisions of those sections seem to demand consideration as affecting, at least in some degree, the rights of the parties'.
The construction of a building involves the co-operation of a variety of agencies. It is not built by the original contractor himself. It is true that he undertakes its construction, but to enable him to execute his contract, he must rely to a greater or less extent upon others. The accomplishment of the work requires the purchase of material and the employment of mechanical and other labor, of all.of which the owner receives the benefit. The purpose generally of laws providing for mechanics’ liens is to afford some measure of security to those whose property and services have entered into the improvement; and such laws have, as a rule, been upheld by the courts. That a statute providing liens in favor of persons dealing with the principal contractor, and the benefit of whose property or services or labor accrues to the owner, *272 may interfere with the performance by the latter of his contract according to its terms, does not render the law unreasonable, or repugnant to the constitutional provisions upon which the appellees rely. Speaking with reference to such a law, in Smalley v. Gearing, 121 Mich. 190, 198, the court said: “The statute was intended to protect sub-contractors, material men and laborers, and its benefits should not be frittered away by construction, unless clearly unconstitutional. It does not impair the obligations of contracts, but provides a method for securing payment to those whose labor or material goes into the building, and at the same time protects the owner and contractor, if the provisions of the act are complied with. The doctrine upon which such liens are founded is the consideration of natural justice that the party who has enhanced the value of property by incorporating therein his labor or materials shall have a preferred claim, in a certain sense, on such property, for the value of his labor or materials.”
A mechanic’s lien is the creature of statute. The power to enact the law includes the power to prescribe the conditions upon which the lien may be acquired, and with reference to which the rights of persons interested shall be determined. The foregoing sections provide the form of a contract which must be entered into by the owner and the principal contractor to enable the latter to secure a lien for himself, and to enable the former to confine the liabilities to which his property may be subjected, to the contract price; but they do not prohibit those parties from entering into another and different contract. There is no interference with, or abridgment of, their right to contract as they may see fit. It is true that a material departure from the provisions of the statute with reference to the contract affects the owner’s liability. If he exercise his -right of disregarding the *273 statutory provisions, persons furnishing material to, or performing labor for, the principal contractor, become entitled to a lien for the full value of their material or labor, instead of being restricted in amount to the contract price, so that the owner’s property may be held for a larger sum than he agreed to pay for the work; and counsel says he is thus subjected to a penalty for exercising a constitutional privilege. But the statute simply imposes-upon the owner a duty to see that those by means of whose property and services the value of his own property is enhanced, receive the compensation to which they are justly entitled. In making his contract he knows that labor and material will be necessary for the accomplishment of the work, and that the contractor may obtain those things on credit from others, but the benefit of which .he will nevertheless receive and enjoy; and the effect of a law charging the property into which they enter with a lien on account of the values which thus accrue to him, is not to subject him to a penalty, or to interfere with any of his constitutional rights. — Henry & Coatsworth Co. v. Evans, 97 Mo. 47; O’Neil v. St. Olaf’s School, 26 Minn. 329; Laird v. Moonan, 32 Minn. 358; Spofford v. True, 33 Me. 283; White v. Miller, 18 Pa. St. 52.
In the case first cited the court said: “The owner’s liberty of action is not invaded by the statute. He need not employ an intermediary to erect his building. But if he does, the law ingrafts upon his act certain consequences. It enters into and forms part of his agreement so far as regards the subject-matter to which the statute relates. By virtue of the law the contractor is invested with a power to charge the property for the reasonable value of the labor and materials supplied to it by sub-contractors. The right of lien-arises from the statute, which applies, bv its own force, to every transaction that parties, by *274 their voluntary action, bring within its terms. No one is deprived thereby of the gains of his own industry. The legislative purpose is quite the contrary. It is rather to prevent one man from enjoying, without compensation, the gains of another’s industry in circumstances which the law-makers regard as imposing a duty on the former to see that the latter is paid therefor. ’ ’
If the statutory provisions in relation to the contract be observed, the owner protects himself fully against loss on account of liens of sub-contractors. The amount for which such liens may be claimed, is, in such case, limited to the contract price. The owner cannot be held for more than he agreed to pay his contractor. He is entitled to notice from persons other than the principal contractor, furnishing material or performing labor for the iatter, either before or after the furnishing of material or the performance of the labor has commenced, stating, among other things, in general terms, the amount in value of what has been done or what is proposed to be done, and he may then withhold from his contractor sufficient money due, or to become due, to answer the claims. If such notice be not given he is not required to withhold the money. A compliance with the law on his part will secure him against double payment. It is only in case he fails to contract in conformity with the statutory provisions that his liability extends to the value of the material or labor regardless of the contract price. If he desires to exchange property for his building or improvement, instead of making the cost payable in money, he is not prohibited from doing so. The contract as between him and his contractor will be valid, but he enters into it with full knowledge that in such ease the lien claims to which the property may be subjected, will be measured in amount by value, and not by contract price. As the *275 statute enters into the contract, he consents to the burdens which are imposed, and a departure by him from the prescribed form is taken, presumably, because he finds that the step will inure to his advantage. He makes the contract with his eyes open, and the fact that his property may he incumbered in a different manner and for a larger amount than if he had pursued the specific method directed by the law, affords him no ground of complaint. In some of the cases to which we have referred the statutes which were considered subjected the. property to liens for the full value of the materials and labor entering into the structure, no matter what the contract might he. The owner had no opportunity to contract so as to avoid the possibility of being held for more than he had agreed to pay, and those statutes were therefore less favorable to the owner than this. Yet they were held to be constitutional.
Nor is it any objection to the law, that, in the language of counsel, “it undertakes to make out of the contractor, who is an adverse party to the owner of the premises, an adverse agent for the owner, when the interests of the two are adverse.” Without express provision, the contractor would possess the powers of an agent. It is in virtue of his power to incumber the property by procuring material and labor that the right to a lien accrues to persons furnishing him with those things. In O’Neil v. St. Olaf’s School, supra, it is said that “the statute gives as an incident to a contract for erecting, altering or repairing a house, power to the builder or contractor to charge the house and the land with debts for labor and materials incurred by him in performing the contract. The owner consents to this power conclusively and irrevocably, so far as others than the builder or contractor are concerned, by making the contract while such is the law.” See also Laird v. Moonan, *276 supra. The legislature of California enacted a statute, the provisions of which were in all material respects the same with those we have been considering, and upon which our law was evidently modeled. In Kellogg v. Howes, 81 Cal. 170, that statute was exhaustively considered, and was sustained in all its features and phases.
We do not propose to discuss the question which counsel raises, whether knowledge by the lien claimants, at the time they made their agreements with the ■contractor, of the terms and provisions of the contract as it was made, dispenses with the necessity as to them of recording the contract. The purpose of recording the contract prescribed by the statute is to advise persons dealing with the contractoi of its contents, so that, as they have no remedy against' the property for claims in excess of the- contract price, they may act intelligently and be able to determine whether the security is sufficient to justify them in parting with their material or expending their labor. It is asserted that the cross-complainants had such knowledge of this contract; and if it had been a contract for the recording of which the statute provides, it may be that their knowledge would take the place of a record. But it was not the contract to which the requirement was intended to apply. The contract to be recorded is a contract, the terms of which are contained in the statute. The one before us is not such a contract. It varies in important particulars from the statutory contract; and knowledge by the lien claimants of its terms would have simply been knowledge of a contract by which their rights were in nowise affected.
Another objection to this statute goes to its title. It is provided by section 21, article V, of the constitution that no bill, except general appropriation bills, shall be passed containing more than one subject, *277 which shall be clearly expressed in its title. The act under consideration is entitled “An act to secure liens to mechanics and others. ” It is argned that the words £ £ and others ’ ’ add nothing to the title, and that, therefore, the title amounts to no more than if it read “An act to secure liens to mechanics.” In the act provision, is made for the acquiring of liens by a number of persons in addition to mechanics, and we are led to infer from the tenor of counsel’s argument that he regards the provisions in favor of mechanics, material men, laborers, etc., as constituting, each, a distinct subject. If our inference is warranted, counsel misunderstands the meaning of the word “ subject.” The act embraces but one subject, and that is the securing of mechanics’ liens to certain designated persons. It prescribes the manner in which, and specifies the persons by whom, such liens may be acquired; it regulates the amount for which they may be claimed; and it provides for their limitation as to amount, in favor of the owner, upon conditions to be observed by him. All these provisions are germane to the general purpose of the act. It is not necessary that the title should minutely specify the contents of the bill. Mr. Cooley says that the constitutional provision is accomplished when the law has but one general object, which is fairly indicated by its title.— Cooley’s OonstitutionalLimitations (5th ed.),*144; see also Airy v. People, 21 Colo. 144; Burton v. Snyder, 22 Colo. 173; Ludington v. Heilman, 9 Colo. App. 548.
According to this title, the purpose of the.act was to secure liens to certain persons, and its benefits were not to be confined to mechanics. It says “mechanics and others.” There is in it no enumerated list of the others, but the public is advised that there are persons aside from mechanics who may be entitled to liens. It is true that to find who the others are, reference must be had to the body of the act; but *278 none of the details — and there are many — can be found in the title. They are discoverable only by an examination of the act itself. Counsel, however, refers us to County Commissioners v. Mining & Smelting Co., 3 Colo. App. 223, as determinative of the question in his favor. The title there spoken of was “An act to amend section 29., * * * and to repeal sections 30, 31, 32 and 33, and for other purposes,.” The court said that the words “and for other purposes” were meaningless and of no legal significance. A little reflection will make the justness of this observation evident. A title with those words added would indicate that the law had several purposes, and, therefore, embraced more than one subject. This the constitution forbids, and if in such respect the law should conflict with the constitution, the added words in the title would not save it. It would be no less void than if they were not there. If, on the other hand, the law should actually embrace but one subject, those words would convey no meaning. In either case they would be useless. The case cited is obviously not in point. Here the law embraces’but one subject; that subject relates to the securing of liens to mechanics and others, and the title expresses it exactly.
Section 3 of the act requires every original contractor, within sixty days after the completion of his contract, and every person save the original contractor, claiming the benefits of the act, within thirty days after the completion of the improvement, to file for record with the county recorder a claim containing a statement of-his demand, after deducting all just credits and offsets, with the name of the reputed ownei-, if known, the name of the person by whom he was employed, or to whom lie furnished the materials, a statement of the terms and conditions of his contract, and a description of the property to be charged *279 with the lien. It is objected to these liens that the claims do not contain statements of the demands of the claimants, after deducting all just credits and setoffs, nor any statements of the terms or conditions of the contracts; that there are material variances between the notices of intention to file lien statements and the statements actually filed, and that there are material variances* between the statements and the facts established by the evidence. It is said by Mr. Justice Elbert, in Barnard v. McKenzie, 4 Colo. 251, that notwithstanding the lien was unknown to the common law and is purely the creature of statute,' in view of its equitable character, the statute giving it should be liberally construed so as to advance its object, and the policy thus indicated has been adhered to by the courts of this state. — Williams v. Uncompahgre Co., 13 Colo. 469; Cannon v. Williams, 14 Colo. 21; Canal Co. v. Engley, 18 Colo. 388; Hardware Co. v. McCarty, 10 Colo. App. 200.
However, because the statute is to receive a liberal construction, it does not follow that a substantial conformity to its requirements is unnecessary.
Each of the lien claims before us appears to contain a statement of the claimant’s demand, after deducting all credits and setoffs which the claimant regarded as just, and counsel has not indicated wherein he regards the statement as insufficient. We therefore pass his first objection without further notice.
The next question is, to what extent the want, if it existed, of a statement in any of these claims of the terms and conditions of a contract would render the claim defective. The statute makes provision for but one contract, and that is the contract between the owner and original contractor. Persons dealing with the contractor are nowhere required to enter into any express contract with him. Their contract may be *280 simply one which is implied by law from the facts. They are spoken of merely as persons performing-labor for, or furnishing material to, him. Performing the labor or furnishing the material at his request, would give rise to a liability against him by operation of law; but a contract which rests solely in implication has no sjDecific terms or conditions, and, therefore, none could be stated in the lien claim. The requirement that the lien claimant shall incorporate the terms and conditions of his contract into his lien statement, must be construed as having reference only to the principal contractor. lie is the only one of the possible lien claimants who is supposed to enter into a formal contract, and it must therefore be his contract that the statute contemplates. The prolusion must be so construed to give it any effect. There is no reason why labor may not be employed ox-material furnished under express agreement with the contractor; but as none is required, none need be stated; and an attempt to state one would be without consequence. The lien statement of one of the claimants purports to set forth the terms and conditions of a contract. The notice of intention to file a lien also purports to do the same; but the notice and the claim differ in this, that the former states an agreed price, while the latter gives reasonable value, the amounts named in both being the same. If reference to the contract was necessary, a liberal construction of the statute would render the variance immaterial, even if, under any rule of construction, it could be regarded as important. But the reference to the contract ■ was unnecessary, and neither benefited nor harmed the claim or the notice.
There appear to have' been some discrepancies as to amounts due between the. statements in the lien claims and the evidence. They are not gross, and seem to have been purely the result of mistake. To *281 hold that their effect is to destroy- the liens would be to give the statute, instead of a liberal, a rigorous construction. No person appears to have been mis-led, or injured in any degree, by the mistakes, and they did not affect the standing of the liens. — Cannon v. Williams, 14 Colo. 21; Barber v. Reynolds, 44 Cal. 519.
Upon the case made by the cross-complainants, they were entitled to the establishment and enforcement of their liens for the amounts which the evidence showed to be due. The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

Reversed.