Donaldson et al. *v.* Holmes et al.

JOHN DONALDSON, and THE EMPORIUM COMPANY, Plaintiffs in Error, *v.* JAMES HOLMES, and NILES L. WICKWIRE, Defendants in Error.

ERROR TO PULASKI.

In proceeding to enforce a mechanics' lien against the person who is in possession of the land, and for whom the work is done or materials furnished, the land may be sold, and his interest, whatever it may be, will vest in the purchaser.

The holder of the legal title to land ought not to stand by and see a contract made for work on the lot, and then set up his title to defeat a mechanics' lien, when he gives no notice to the mechanic of the state of the title.

THIS was a petition for a mechanics' lien, filed by Holmes and Wickwire, at the April term of the Pulaski Circuit Court, 1859, against John Donaldson, and praying that the Emporium Company might also be made a party defendant to said petition.

The plaintiffs proved that Donaldson entered into a written agreement with them, on or about the 27th of April, 1857, by which he was to pay them $1,000 for furnishing materials and erecting a frame house, of certain dimensions, on a certain lot of ground in Mound City; $25 was to be paid down, which was done, and $500 in six months, and the balance on completion of the work. They proved that they commenced the job, and furnished materials and performed work to the amount of seven hundred and fifty dollars, and that they were prevented from completing the job by Donaldson's not being able to comply with his part of the contract. Default was taken as to Donaldson, but the Emporium Company filed an answer, setting up, amongst other things, that the lot on which said house was partially constructed, belonged to said company; and proved that on the 17th day of April, 1857, John Donaldson purchased lots 39 and 40, in the Emporium plat of Mound City, from said company; that the Emporium Company executed to Donaldson a certificate of sale of said lots on the following conditions to wit: Donaldson was to pay said company $1,568 for the two lots, and executed his three several promissory notes for the same; one for $522.66, payable in one year from date;

one for $522.67, payable in two years, and one for the same amount as the last, payable in three years. If Donaldson failed to pay either of said notes as they became due, the Emporium Company reserved the right to absolutely rescind the contract by order of its board of directors, at the expiration of ninety days after such failure on the part of Donaldson. Donaldson failed to make the first payment, and the Emporium Company rescinded the contract according to the conditions of the certificate of sale.

There was a condition written on the back of said certificate of sale, requiring Donaldson to construct a frame house of certain dimensions, on one of said lots within one year from the date of the sale; the house partially executed by Holmes and Wickwire was on No. 39 of the above mentioned lots.

Hartzel Hainer was president of the Emporium Company, at the time Donaldson purchased said lots, and knew all about the conditions of the sales between the Emporium Company and Donaldson for the lots; and he also, at the request of Donaldson, and as a mere matter of accommodation to the parties, drew up the agreement between Holmes and Wickwire and Donaldson, for the furnishing materials and building said house; but he testifies that said sales were in nowise connected with each other. It was one year and ninety days from the time Donaldson purchased the lots until he forfeited his certificate of sale, and the lots reverted back to the Emporium Company. Holmes and Wickwire furnished the material and partially erected the house immediately after Donaldson purchased the lots, but did not attempt to enforce their lien until after Donaldson had absolutely forfeited all his right, and the lot had reverted back to the Emporium Company.

The court decreed that Donaldson, or the Emporium Company, should pay Holmes and Wickwire the sum of seven hundred and twenty-five (725) dollars, in sixty days, and if not paid within that time, that the property should be sold, and Holmes and Wickwire be first paid out of the proceeds of such sale, and the overplus be paid to the Emporium Company.

T. A. GREEN, for Plaintiffs in Error.

WILLIAM HUNTER, for Defendants in Error.

BREESE, J.   At the time the contract set out in the record in this case was entered into, for the erection and completion of the building on the lot therein described, Donaldson had an equitable title to the lot in virtue of his certificate of purchase from the Emporium Company, in whom the fee resided. Under

the seventeenth section of ch. 65, (Scates' Comp. 158), he is to be considered the owner within the meaning of that chapter, to the extent of his right and interest in the premises. Donaldson held such an interest until the work was completed by the contractors for building, and did not forfeit his right until some time afterward, nor is it very clear that his right was ever forfeited, no vote of the board of directors of the company having declared a forfeiture, as the contract with the company on the purchase of the lot provides. Be this as it may, Donaldson had such an interest in the lot as will support the lien of the mechanics who erected the building and furnished the materials, and such lien binds his whole estate and interest in it, whatever it may be, in like manner as a mortgage would have done, and the creditor may cause the right of redemption, or whatever other right or estate such owner had in the land at the time of making the contract, to be sold, and the proceeds of sale applied according to the provisions of the statute.

In *Stiegleman et al.* v. *McBride*, 17 Ill. R. 301, this court say, " Where work is done or materials furnished under the provisions of this law, they become a part of the *land*, and together with the ground upon which the improvement is made, form one entire thing, that is, real estate; and however many interests there may be in the land, and by whatever names they may be known, all together constitute the *land*. The land may be sold in this proceeding, and the money applied according to the rights of all parties in interest and before the court. The lien created by the law is not against the specific thing furnished, nor necessarily against the interest alone in the land of the party for whom they are furnished, but against the land, and should be satisfied out of the same in any manner consistent with the statute, and the principles of equity." Again the court say, " The person for whom the work is done or materials furnished, may have a life estate in the land, determinable at a period uncertain, as the life may be long or short; he may have a right of possession for a period certain, and the improvements and erections may be of a character entitling him to remove them, or surrender them to the owner of the fee ;" and further, " In a proceeding against the party in possession, though he be not the owner, the land may be sold, and the purchaser will take the title as against him. As against the party for whom the work is done or materials furnished, and who is in possession, the land may be subjected to sale, and whatever interest he may have therein, be it more or less, will vest in the purchaser." *Turney* v. *Saunders et al.*, 4 Scam. 527 ; *Garnet* v. *Stephenson et al.*, 3 Gilm. 261, 280.

The fact, then, that the Emporium Company hold the legal

title to this lot, cannot override the lien of the mechanics. Whatever interest Donaldson had in the premises can be sold, and to this extent is the decree of the court.

There is one fact in the case that ought to have considerable weight in favor of the defendants in error, and that is, before they commenced the work, the president of the Emporium Company drew up the contract between them and Donaldson, and never disclosed the interest of the company in the lot. This would seem to, bring the case within the principle decided in *Higgins* v. *Maloney*, 14 Ill. R. 269. In equity the company ought to be estopped to deny that Donaldson was the owner of the lot. The company, by their president, stood by and suffered the defendants to enter into the contract, without disclosing the fact that Donaldson did not own the lot, and had made no payment on it. The principles of equity ought to estop the company from setting up their title against the lien. *Wendall* v. *Rensselaer*, 1 Johns. Ch. 344; *Stores* v. *Barker*, 6 Johns. Ch. 166.

We think the decree of the Circuit Court was right, and accordingly affirm it.

*Decree affirmed.*