WILLIAMS ET AL. V. UNCOMPAHGRE CANAL CO. ET AL.

1. ATTORNEY AND CLIENT — AUTHORITY OF ATTORNEY.— The authority of an attorney to appear for another is generally presumed; but the court has inherent power to determine by what authority an attorney appears either to prosecute or defend for another, whether that other be a natural or an artificial person.

2. PRACTICE — HOW TO QUESTION ATTORNEY'S AUTHORITY.— The proper practice for determining the right of an attorney to appear is by rule of court against him to show his authority. Such rule will not be granted except on *prima facie* showing of want of authority. The issue upon such question takes precedence of other proceedings, and should be determined before a trial either upon the issues of law or of fact.

3. CONTRACT OF CORPORATION — DEFECTIVE EXECUTION — RATIFICATION.— Where a contract under seal has been executed by the officers of a corporation in their individual names, it is competent to aver and prove by parol that the corporation, as the real party in interest, adopted, ratified and undertook to carry out the terms of the contract in such a manner as to become bound thereby.

4. MECHANIC'S LIEN — AN EQUITABLE PROCEEDING.— The statutory proceedings to enforce rights under the mechanic's lien law are in their nature equitable, and equitable rules govern in their administration.

5. SAME — CONTRACT WITH AGENT OF OWNER.— Chapter 65, General Statutes, provides a lien for all who do. work, etc., by contract with the owner, etc.; but it is sufficient if the contract be either express or implied, and with an authorized agent for and on behalf of the owner.

*Appeal from Superior Court of Denver.*

Mr. L. C. ROCKWELL, for appellants.

. Messrs. WOLCOTT & VAILÉ, C. H. TOLL and D. V. BURNS, for appellees.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

. From the record in this case it appears that the Uncompahgre Canal Company, one of the appellees herein, spoken of in this opinion as "The Canal Company," was organized as a corporation under the laws of this state in May, 1883, for the purpose of constructing an irrigating canal in Montrose county, Colorado.

In September, 1883, Theodore C. Henry, being the president, and Henry J. Aldrich, the treasurer, of said canal company, entered into a contract with Joseph Williams, one of the appellants herein, whereby Williams agreed to construct certain canals and ditches for said canal company. Williams, having obtained a loan of money from one Jerome B. Chaffee to enable him to carry on the work of constructing said canals, assigned said contract to Chaffee as collateral security for such loan.

During the year 1884, the canal company executed certain deeds of trust conveying said canal, with all its laterals and appurtenances, to one Gustavus F. Davis, as trustee, to secure the payment of construction bonds amounting, in the aggregate, to $200,000. In July, 1884, Williams,

not having received full payment for the work done by him under said contract, took steps in connection with Chaffee, assignee as aforesaid, towards claiming and holding a mechanic's lien upon said canal, its laterals, privileges, etc. In January, 1885, Williams and Chaffee commenced this proceeding against the canal company, Henry & Aldrich, as copartners, Gustavus F. Davis, trustee as aforesaid, and also a large number of persons who had filed their notice of intention to claim a lien on said canal for work and labor done thereon as subcontractors and material-men, the object of the proceeding being to enforce, on behalf of Williams and his assignee, their claim under the mechanic's lien statute.

John P. Brockway, Esq., having appeared as attorney for the canal company, Henry & Aldrich, and Davis, trustee, entered into a stipulation with L. C. Rockwell, Esq., attorney for Williams and Chaffee, whereby it was agreed, *inter alia*, that the venue of the cause should be changed, an amended complaint filed, and that the proceedings should be dismissed as to all persons claiming liens as subcontractors and material-men, as above stated; also that the Travelers' Insurance Company of Hartford, Connecticut, spoken of in this opinion as "The Insurance Company," should be made a party to the proceeding in place of the lien claimants so dismissed; said insurance company having attempted to purchase the interest of said claimants in the result or proceeds of the suit.

. The amended complaint contains averments to the effect that, while the contract under which Williams performed the work was in the name of Henry and Aldrich, the work was for the use and benefit of the canal company; that Henry and Aldrich were the president and treasurer, as well as the principal stockholders, of the canal company when said contract was made; and that said contract was made, not only for themselves, but for and on behalf of said company, with its knowledge and consent, and at its special instance and request; also,

that the canal company had always acknowledged said contract as its own, and as binding and obligatory upon it; that said company had ratified all the terms and conditions of said contract, and had never disclaimed that the canal was being constructed for its use and benefit, and with its knowledge and consent; that plaintiffs had constructed and finished said canal for the distance of fifteen miles from its head-gate prior to June 1, 1884, at which time the canal company had taken possession thereof, and used the same; that said canal had been built in all respects in accordance with the specifications of said contract, to the complete satisfaction of said Henry and Aldrich, as the agents of said company; that Henry and Aldrich and the canal company had failed to make correct measurements and estimates upon the work as the same progressed, and had neglected, failed and refused to pay plaintiffs for the work so done by them in constructing said canal; and that a large amount was due plaintiffs therefor under and by virtue of the terms of said contract.

Mr. Brockway, as attorney for the canal company, filed an answer in its behalf to the amended complaint, without traversing the material averments above set forth, and expressly admitting that there was due to plaintiffs on said contract the sum of $43,651.42, less the sum of about $17,000 paid out by the Travelers' Insurance Company for the canal company, and admitting that plaintiffs have a good and valid lien on all of said company's property for the amount due on said contract. Subsequently, Messrs. Toll & Wolcott appeared for the canal company, and filed another answer in its behalf, traversing most of the material matters set forth in the amended complaint, and containing several affirmative defenses, in which it was averred, among other things, that Henry and Aldrich were the principal contractors for the construction of the proposed canal, and that Williams was only a subcontractor; that the work done by

him was upon the faith and strength of the covenants and agreements contained in the contract made by him with Henry and Aldrich personally, and upon their personal credit, and not otherwise; and that, as such subcontractor, Williams was bound to file his notice of intention to claim a lien within forty days from the time the last work was performed by him; that Williams completed his work upon the canal June 1, 1884, but did not file his notice of lien until long after the expiration of forty days thereafter, to wit, on the 24th day of July, 1884, and that, by reason of the premises, the plaintiffs acquired no lien whatever upon the property of the canal company, and are not entitled to maintain this action for the purpose of foreclosing a mechanic's lien thereon.

Messrs. Toll & Wolcott moved to strike out the answer so filed by Mr. Brockway, and Mr. Brockway moved to strike out the answer so filed by Messrs. Toll & Wolcott; but the court ruled to suspend action thereon, and to allow both answers to remain on file until the final hearing. To these rulings plaintiffs duly excepted.

The insurance company, having been made a party defendant, filed its answer, in which, after traversing most of the material averments of the amended complaint, it was alleged, in substance, that prior to the time when plaintiffs filed any notice or declared any intention to claim a lien upon the canal property said insurance company became and was the holder of a large number of the mortgage bonds of the canal company, as collateral for large sums of money advanced to Henry and Aldrich for the purpose of constructing said canal; and that, being the holder of such bonds, in order to protect the security thus acquired they had purchased for a valuable consideration the several claims of the subcontractors and material-men, and paid therefor the sum of $17,000. It was further alleged in said answer that the insurance company, by the purchase and assignment of said claims, had succeeded to all the rights of said several lien claim-

ants, and was entitled to have the amount due upon said several lien claims declared in its favor. The insurance company prayed, among other things, that the claim of plaintiffs to a lien be declared void, and that the amount due upon the several lien claims assigned to it might be ascertained, and satisfaction thereof decreed, by foreclosure and sale of the canal property in the usual form, as prescribed by statute, etc.

Replications having been duly filed to these several answers the cause was tried, and upon final hearing the court found and adjudged in substance: That the equities of the cause are with the defendants; that the answer of the canal company filed by Mr. Brockway ought to be stricken from the files; that the contract under which plaintiffs did the work was not the contract of the canal company; that plaintiffs' notice of intention to claim and hold a mechanic's lien was not given and filed within the time prescribed by statute; that plaintiffs are not entitled to have and maintain their said lien; and that the plaintiffs' original and amended complaints be and stand absolutely dismissed, etc. The plaintiffs excepted to the findings and judgment aforesaid, and bring the case to this court by appeal under the act of 1885.

The authority of an attorney to appear for another in a court of justice is generally presumed. Nevertheless, the court has the inherent power to determine by what authority an attorney appears, either to prosecute or defend, in the name of another, whether the person for whom the attorney assumes to act be a natural or an artificial person. Weeks, Att'ys, § 196; *King of Spain v. Oliver*, 2 Wash. C. C. 429; *Insurance Co. v. Oakley*, 9 Paige, Ch. 496.

A question regarding the right of an attorney to represent the party in court for whom he has assumed to act is in general easily decided; but in case of difficulty the proper practice for determining such controversy is to obtain a rule of court against the attorney to show his

authority.  Such rule will not be granted on a mere sug-
gestion; there must be a *prima facie* showing of a want
of such authority, and such showing must be made by or
on behalf of some party interested in the particular suit
or proceeding wherein such controversy has arisen.  The
rule being granted, the attorney is at liberty to show
cause against the same by answer and evidence, as the
court shall direct; and upon such showing and evidence,
*pro* and *con*, the court will determine the controversy in
a summary way.  The rule should be asked for, if at all,
in apt time, or as soon as the want of authority is dis-
covered.  When such a question is presented to the court
it should, in the nature of things, take precedence of
other proceedings.  Its determination is essential in or-
der that the court and all parties interested in the suit
or proceeding may know whether the acts of the attor-
ney in the particular suit are or are not to be regarded as
the acts of the party whom he professes to represent.
Weeks, Att'ys, § 214; *Lynn v. Glidwell*, 8 Yerg. 1; *Tur-
ner v. Caruthers*, 17 Cal. 432; *Reece v. Reece*, 66 N. C. 377.

The authority of Mr. Brockway to appear for the canal
company having been questioned, the action of the court
in allowing both answers to remain upon file until the
conclusion of the trial, against the objections of plaintiffs,
was an irregularity of which they may justly complain.
They had a right to know, before going to trial, which
of the two answers was the real answer of the canal com-
pany; and the court should have determined this contro-
versy before putting the parties to the trouble and expense
of a trial either upon the issues of law or of fact presented
by the various pleadings.  Without such determination,
neither court nor counsel could know what issues were
really to be tried.  To go to trial upon such inconsistent
answers, apparently by the same party, was to set at
naught all rules of pleading against duplicity and repug-
nancy.  A more embarrassing situation can hardly be
imagined.  Both answers being on file, both sets of at-

torneys might appear for the same party, and upon
questions of evidence might, and probably would, take
different positions, according to the theories of their re-
spective defenses; and thus the court, in order to rule
upon such questions, would be obliged to assume, *a priori*,
which of the opposing answers was to be regarded as the
real answer of the canal company, and so practically de-
cide, in advance of the evidence, one of the questions at
issue, to wit, the question of authority between the at-
torneys.   A still more practical difficulty was encoun-
tered by attempting to try the question of authority
between the attorneys and the merits of the cause at the
same time and upon the same evidence.   The evidence,
it seems, was not sufficient to satisfy the court of Mr.·
Brockway's authority to represent the canal company in
the pending litigation; and yet the evidence was ample
to show that Henry and Aldrich, under whose direction
he had assumed to appear, had been officers of said com-
pany, and, as such, capable of binding it by their acts
during the occurrence of all the transactions upon which
plaintiffs based their claims for relief.   The want of au-
thority on the part of Henry and Aldrich to direct the
filing of the answer in October, 1885, was no evidence of
their want of authority up to June 1, 1884; and yet, con-
sidering the mode of conducting cases in open court at
*nisi prius*, the admission of evidence upon the former
point was calculated to discredit the testimony of Henry
and Aldrich, impeach their good faith, weaken confidence
in their previous authority, and so greatly prejudice the
plaintiffs' substantial rights.   Plaintiffs should not have
been required, involuntarily and unnecessarily, to submit
their cause upon its merits under issues and evidence of
such divergent character and tendency.

It is contended by counsel for appellees that the com-
plaint does not state facts sufficient to constitute a cause
of action.   Upon an examination of the objections to the
complaint, we are of the opinion that they are not well

taken. Objections on account of defect or misjoinder of parties were waived by answering over. Notwithstanding Henry and Aldrich were named as the parties contracting with Williams, it was competent to aver and prove by parol that the canal company, as the real party in interest in the proposed canal, adopted, ratified and undertook to carry out the terms of the contract with Williams in such a manner as to entitle him to a lien under the statute for any balance due him as principal contractor. Though it was alleged in the complaint upon which the case was tried that the canal company was the real party to the contract executed by Henry and Aldrich originally, yet it was not necessary for the proof to go that far. The complaint, as amended, contained additional averments to the effect that the canal company ratified the contract, and undertook to carry out the terms thereof, and encouraged Williams, by promises and agreements, in the building and construction of the canal for its use and benefit. These averments, and the proof offered in support thereof, were sufficient to overcome whatever force there may be in the technical objection that, the original contract being under seal, additional parties thereto cannot be shown by parol. The execution of a contract under seal by Henry and Aldrich certainly did not prevent a new contract upon the same terms between Williams and the canal company from springing into existence, either by express agreement or by implication of law.

Mr. Pomeroy, in his Equity Jurisprudence, says: "Even the equitable rule permitting a sealed agreement to be modified or replaced by subsequent parol contract is generally adopted by the law courts, except in cases where the statute of frauds prevents its operation."

In the case of *Briggs v. Partridge*, 64 N. Y. 357, so much relied upon by counsel for appellees, the contract under consideration was for the sale and purchase of land, and the court was careful to state that no ratifica-

tion of the contract by the unnamed principal had been shown.

But it is unnecessary for us, in this class of cases, to follow the stringent rule adopted by some of the law courts; for, as was observed by Mr. Justice ELBERT in delivering the opinion of the court in *Barnard v. McKenzie,* 4 Colo. 252: "Notwithstanding the [mechanic's] lien was unknown to the common law, and is purely the creature of the statute, in view of its equitable character we think the statute giving it should be liberally construed so as to advance its objects." Mr. Justice STONE, also, in delivering the opinion of the court in *Smelting Co. v. Finch,* 6 Colo. 221, said: "The statutory proceedings to enforce rights under the mechanic's lien law are in their nature equitable, and, prior to our present code practice, were administered by the chancery side of the court, and were governed by the rules of the chancery practice." 1 Pom. Eq. Jur. §§ 70, 379, 383, 384; Story, Ag. § 160; *Mining Co. v. Root,* 1 Colo. 374; *Randall v. Van Vechten,* 19 Johns. 60; *Donaldson v. Holmes,* 23 Ill. 85; *Ford v. Williams,* 21 How. 287.

Chapter 65 of the General Statutes of Colorado provides for a lien in favor of all who do work or furnish material by contract with the owner of any land, etc. It is not denied that the canal company has an interest in the land through which the canal was constructed, capable of being subjected to a lien for the cost of such construction. The contention is that Williams' contract was not with the owner. It is not necessary that the contract should be with the owner personally. It is sufficient if it be with an authorized agent, for and on behalf of the owner. In case of a corporation, the contract must, of necessity, be with an agent; if express, with an agent *de jure* or *de facto;* if implied, it must be from such conduct on the part of those having actual control and management of the improvement in behalf of the corporation, and in connection with the work performed

or to be performed by the party claiming the lien as contractor, as would justify a person of ordinary experience in such matters in believing that he was performing the work for and at the instance of the corporation, and that the corporation was primarily liable to compensate him therefor.    Again, it is not necessary that the contract should be under seal nor in writing, nor that it should be an express contract of any kind.    It is sufficient if the work be done under such circumstances that the law will imply a promise on the part of the owner to pay for the improvement to the party making the same.    Gen. St. Colo. §§ 2131, 2136, 2139; Phil. Mech. Liens, §§ 65, 66, 75, 80; 1 Mor. Priv. Corp. § 507; 2 Mor. Priv. Corp. § 637.

It is averred in the answer last filed in behalf of the canal company that Williams was a subcontractor only. If so, then there must have been a principal contractor; and so it is averred that Henry and Aldrich were the principal contractors, and that Williams contracted and dealt with them personally, and not otherwise.    Henry and Aldrich being president and treasurer, respectively, of the canal company, a duly-organized corporation, as well as members of its board of directors at the time the contract was executed, the presumption is against their having exercised their power as corporate officers to secure the contract for themselves individually; besides, no such contract was produced in evidence from the records of the corporation, nor did any witness testify to the making of any such contract, and Henry and Aldrich expressly testified that none such was ever made.    Williams also testified that his dealings throughout were with Henry and Aldrich, as officers of the canal company, and not as individuals; and that he never heard that they were principal contractors, and he a subcontractor under them, until after he became involved in this controversy.    He regarded himself as the principal contractor, and dealt with the company's agents as such

at all times. The estimates of the work furnished him support this view. Whatever may have been the rela- tions and dealings between the canal company and Henry and Aldrich, as shown by the record of their proceed- ings, or otherwise in respect to the construction of the canal, Williams would not be affected by such relations, dealings or proceedings, without timely notice thereof, so long as he dealt with Henry and Aldrich in their ca- pacity as agents of the company, in good faith, and within the scope of their apparent authority as such agents, and not as individuals. 1 Mor. Priv. Corp. §§ 507, 509, 517; *Donaldson v. Holmes, supra.*

Full latitude was allowed to the canal company under the last answer filed in its behalf; and the insurance company was permitted to make common defense with it on the trial in the endeavor to defeat plaintiffs' claim on the merits. Nevertheless, it clearly appears by the evidence that a large balance was due to plaintiffs on ac- count of the work done by Williams in constructing the canal. The plaintiffs' evidence tends to show that such balance amounts to upwards of $22,000, while the evi- dence on the part of the canal company shows that it is about half that sum. The difference results from a disagreement about the measurements, estimates and classification of the work. According to the measure- ments, estimates and payments, as given in evidence by the officers and agents of the canal company, it is shown that the whole work performed by Williams in pur- suance of the contract amounted to $76,090.64, upon which there had been paid to plaintiffs, or their order, $47,876.27, besides $17,124.12, paid by the insurance com- pany to subcontractors and material-men, leaving a bal- ance due and unpaid to plaintiffs of $11,090.25 on June 1, 1884.

It is insisted by counsel for appellants that the insur- ance company, having been made a party to this pro- ceeding by stipulation, solely on the ground of its having

purchased the claims of the subcontractors and material-
men under Williams, has no right to interpose defenses,
nor to assert claims, inconsistent with its *status* as such
assignee; as by attempting to impeach the contract by
virtue of which plaintiffs claim their lien.   It is unnec-
esssary to pass upon this proposition; for, giving full
effect to the claim of the insurance company as owner
of the mortgage bonds of the canal company, nothing is
added to the defense made by the latter company.   The
same may be said of the answer of Davis, trustee for
the bondholders.   Since plaintiffs' lien is good against
the canal company it is good against the mortgagees.
The work performed by Williams under the contract was
an entirety, and was commenced long prior to the issu-
ance or sale of any of the mortgage bonds; and, for
aught that appears in the answer of the insurance com-
pany, Williams had completed his contract, though he
had not filed his notice of lien, before said company be-
came the owner of the bonds.   Phil. Mech. Liens, §§ 211,
225; *Mining Co. v. Gallagher*, 5 Colo. 23; *Tritch v. Nor-
ton*, 10 Colo. 337.

The conclusion reached is that it was error to require
plaintiffs, against their objections and exceptions, to go
to trial before the controversy was settled in reference to
the answers of the canal company, and that the recep-
tion of evidence touching the authority of the respective
attorneys to appear for said company, while the cause was
being tried on the merits, was, under the circumstances,
calculated to confuse and prejudice plaintiffs' substantial
rights; also, that, according to the evidence produced on
the trial, the finding and judgment should have been in
favor of plaintiffs for at least the minimum amount
shown to be due them.   The trial court having made no
finding in respect to the disputed measurements, esti-
mates and classification of the work, we cannot under-
take to determine such controversy so as to direct a
judgment.   The judgment of the superior court is there-

fore reversed at the cost of appellees, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*