[No. 1203.]

THE CARY HARDWARE CO. ET AL. v. McCARTY ET AL.

1. MECHANICS' LIENS—STATUTORY CONSTRUCTION.

The mechanic's lien statute should be strictly construed to the extent that no act required to be done and essential to constitute a lien may be omitted.   But as to the enforcement of the lien after it has attached, the statute should be liberally construed.

2. SAME—OWNER OF LAND.

If a party making improvements on land holds possession of the land under a lease, or by virtue of a license where its authority is coupled with an interest, such party is the owner of the land within the mechanic's lien act.

3. SAME—LEASE.

A contract for possession and occupancy of land, although the occupant was restricted in the use of the land for a specific purpose only, was

a lease, and the assignee of such lessee had such an interest in the land as was subject to a mechanic's lien.

4. SAME—DESCRIPTION OF PREMISES.

The description of the premises in a mechanic's lien statement and notice is sufficient, if there is enough in the description to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty to the exclusion of others. It is not necessary that the description should be either full or precise. A description that identifies is sufficient though inaccurate.

5. SAME.

A mechanic's lien should not fail solely upon the ground that the claim ant in his statement described too large a tract of land if the land properly subject to the lien was embraced in the tract described, especially where no innocent party has been misled and prejudiced thereby. In such case the lien would be held good upon whatever property belongs to the curtilage, and is necessary to the enjoyment of the premises, which is a question of fact.

6. SAME—CONTRACT—CONTINUOUS ACTS.

Where the work done and material furnished, for which a mechanic's lien is claimed, tended to the accomplishment of one purpose, as the construction of a smelting plant, and was practically continuous, the lien will attach from the commencement of the work even though the work was done and material furnished under two or more contracts between the same parties, and it was not necessary for the lien claimant to take steps for asserting his lien at the completion of each contract. And where there was no abandonment of the intention to prosecute the work, the fact that there were interruptions of short periods of time in the construction of the building does not destroy the continuity of the work and prevent the attaching of the lien from the commencement of the building.

7. SAME—REPAIRS.

If during the progress of construction of a building repairs become necessary to the completed portion, the work and material for repairs may be included in and made a part of the account for construction and for which a mechanic's lien is claimed.

8. SAME—SEPARATE BUILDINGS.

Where several buildings are erected upon a tract of land but are all designated for a united enjoyment or common use, they are to be treated as one building in relation to a mechanic's lien claim, and although the lien claimant may have performed work on or furnished materials for only one of such buildings, his lien extends to the whole.

9. SAME—FIXTURES.

The controlling questions in determining as to a large class of articles not permanently attached to the land, whether they partake of a real or personal character in contemplation of the mechanic's lien law, are the intention of the party to make a permanent accession

to the freehold, and the use to which the article is to be applied. If such article constitutes part of a plant of machinery necessary to the operation of the whole, or if its use is essential to the operation of some part of the machinery which is physically attached to the freehold, then it may be properly termed a fixture even though it wholly lacks a permanent physical attachment to the realty.

*Error to the District Court of Lake County.*

This was an action instituted by defendants in error for foreclosure of a mechanic's lien upon the property of the Holden Smelting and Refining Company.

In October, 1890, John M. Maxwell as trustee for the owners of United States mineral survey, No. 158, in California mining district, Lake county, Colorado, executed to Henry H. Norton a written lease for a slag dump situate upon said survey "together with the free right upon said survey and egress over, across and upon said United States survey No. 158, as the same may be necessary for the purpose of working said slag dump, and removing therefrom the material of which said slag dump is composed, and also five acres of the surface of said survey No. 158, for the purpose of erecting such buildings and machinery thereon as may be necessary for treating said slag dump, said five acres to be located contiguous and adjacent to said slag dump." The lease was to continue for a term of five years, with an option to the lessee for an extension of two years. The consideration was that lessee raise and treat for the extraction of minerals therefrom the slag in the dump, and pay to lessor, as royalty, twenty-five per cent of the proceeds arising from such treatment or sale to smelters or ore buyers. It was stipulated in the lease that the lessee should not assign the same or any interest thereunder without the written assent of the lessor, and that he should not " allow any person not in privity with the parties hereto, to enter into or hold possession of the said premises under any pretense whatever."

In December, 1891, Norton entered into a written contract with Edward R. Holden whereby the latter agreed to take the slag from the dump and treat it, and for this purpose

was given the exclusive right to erect upon the leased premises such buildings and machinery as might be necessary, and to use the same during the entire term of the lease and the extension thereof. The other conditions of the contract were substantially the same as those contained in the lease to Norton except that Holden was to pay a larger royalty. The language of the contract bearing upon the grant of the right to Holden to erect buildings and occupy the premises was as follows:

"Now therefore in consideration of the covenants and agreements of the party of the second part hereinafter set forth, the party of the first part agrees to give, and hereby does give and grant unto said second part, the exclusive right under him and subject to all the restrictions in said lease to first party to erect machinery and works of such character as to the second party shall seem best, upon said leased premises, adjacent and contiguous to said slag dump described in said lease, to be used by the second party during the entire term of the said lease and the extension thereof."

Thereafter, on April 30, 1892, Holden with the written consent of Norton, assigned his contract or agreement with Norton to the Holden Smelting and Refining Company in consideration, that it fulfill the covenants therein on his part.

Under this authority and for the purpose of treating the slag dump, the Holden Smelting and Refining Company caused to be erected on the described premises the necessary buildings and purchased and placed therein the proper machinery used in a smelter plant and required for the reduction of the mineral bearing ores taken from the dump. Plaintiffs, as original contractors, claim to have furnished materials for, and to have done work and labor upon said plant to the amount and value of about $11,000, upon which they received payment to the amount of about $6,500. For the balance they claimed a lien upon the premises, and upon July 10, 1893, within three days after their last work was

alleged to have been done and materials furnished, they filed the required lien statement in the office of the clerk and recorder of Lake county. Defendants, the Williams Lumber Company and H. C. Dimick were also claimants of liens under the mechanic's lien acts. All other defendants were claimants of liens created by the levy of writs of attachment issued in suits begun by them against the smelting company. None of the attachment lien claimants appeared except plaintiffs in error, the Carbonate National Bank of Leadville and the Cary Hardware Company, who bring the cause to this court on error and seek to reverse the decree of the district court in favor of the mechanic's lien claimants.

Mr. CHAS. CAVENDER and Mr. L. S. SMITH, for plaintiffs in error.

Mr. A. T. GUNNELL, Mr. F. E. PURPLE and Mr. PHIL. O'FARRELL, for defendants in error.

WILSON, J., delivered the opinion of the court.

It is conceded that whatever may be the rights of the parties to this action who claim liens under the mechanic's lien act, they are measured and controlled by the statute of 1883 as amended by the act of 1889. The later enactments of the legislature on this subject do not apply to the case at bar.

It must also be conceded to be the settled policy in this state, as declared by the highest judicial authority, to favor the enforcement of mechanics' liens when the lien has once attached by a liberal construction of the statute so as to advance its objects. *Barnard v. McKenzie*, 4 Colo. 252 : *Williams v. Uncompahgre C. Co.*, 13 Colo. 478; *Cannon and Dounce v. Williams*, 14 Colo. 23 ; *Empire, etc., Co. v. Engley*, 18 Colo. 394; *Small v. Foley*, 8 Colo. App. 441.

We do not regard *Arkansas River, etc., Co. v. Flinn*, 3 Colo. App. 382, and *Rice v. Carmichael*, 4 Colo. App. 86, as being in

conflict with these cases, when the facts upon which these respective opinions were based, are considered. The language of the court in both cases applies to antecedent acts, which the statute imperatively requires to be done by the party seeking to establish a lien, before the lien is created. In such case it is correct to say that the law should be strictly construed to the extent that no act required to be done and essential to constitute a lien may be omitted.

The law will be liberally construed so far as the enforcement of the lien is concerned, but to lay the foundation for this special and peculiar relief there must be a substantial compliance with all material requirements of the statute. *Cannon and Dounce v. Williams, supra; Greeley S. L. & P. R. Co. v. Harris,* 12 Colo. 229.

Much of the seeming conflict in authority as to the rule for the construction of mechanics' lien statutes is more apparent than real. It arises in many instances from a neglect to scrutinize closely the special circumstances of the case under review and the particular part of the statute construed, and also from the fact, often overlooked, that there are material differences in the statutes of the various states. It is too frequently asserted broadly and hastily that mechanics' lien statutes are in derogation of the common law, and therefore subject to the well-known canon of construction that they must be construed strictly. This is true as to parts of such statutes, but it also may be and invariably is the case as to the greater portion of the same statute that its provisions are remedial in their nature and hence according to a rule of construction, equally well settled, should be liberally construed. If the facts of each case are thoroughly investigated with reference to this distinction the opinions of courts can be reconciled in many instances where they would appear at first glance to be in direct conflict. No inflexible rule of either strict or liberal construction can be laid down, which will be applicable to every part of such a statute in the absence of a provision in the statute itself as to how it shall be construed. *Kezartee v. Marks,* 15 Or. 529; Boisot, Mechs.' Liens, 35.

It is not disputed that the smelting company erected the improvements described in the complaint nor that the mechanics' lien claimants performed work and labor thereon and furnished materials therefor. It is strenuously insisted however that they are not entitled to liens nor to a decree therefor for reasons that will fully appear during the course of this opinion.

The first controverted question to be determined is: did the smelting company have such an interest or estate in the land upon which the improvements were constructed as to bring the case within the provisions of the lien statute?

It is provided in this statute (Sess. Laws, 1889, p. 247) that, "except when otherwise indicated, any person having an assignable, transferable or conveyable interest, or claim in or to any land, building, structure or other property mentioned in this act, shall be deemed an owner." It is urged by plaintiffs in error that the smelting company had no such interest in the land, that its sole interest or claim to any right in connection therewith was derived from the agreement or contract entered into between Norton and Holden, which was subsequently assigned by the latter with the consent of the former to the company, and that this constituted only a license to do certain acts upon the premises. *Per contra* it is contended by plaintiff that the company had a leasehold estate in the land, or an easement or, if not, a right of possession which was assignable.

A license, as affecting real estate, is defined to be a permission or authority to do a particular act or a series of acts upon another's land without possessing an estate therein. 3 Kent, Com. 452; Anderson's Dictionary.

Ordinarily it has no fixed term or duration of time for its existence. It is essentially revocable and its continuance depends on the will of the person by whom it is created. *Bartlett v. Prescott*, 41 N. H. 493; *Tanner v. Valentine*, 75 Ill. 624; *Hill v. Hill*, 113 Mass. 103.

It is based upon the relation or existence of trust and confidence which the donor has in the donee. It is therefore

personal in its nature and cannot be assigned. *Foot v. R. R.*, 23 Conn. 214; *Hill v. Cutting*, 113 Mass. 107; *Mendenhall v. Klinck*, 51 N. Y. 246.

A lease is a contract for the possession and profits of lands and tenements on the one side and a recompense of rent or other income on the other. Anderson's Dictionary, 608; 2 Cruise, Dig. 78; *Jackson v. Harsen*, 7 Cowen, 323; *Strong v. Skinner*, 4 Barb. 553; *Voorhees v. Presbyterian Church*, 5 How. Pr. 71.

Within the narrow limits of a technical definition it will be seen, that the distinction between license and lease is clear, although in actual practice in business life it frequently becomes vague and shadowy. It often happens that before it can be determined whether the contract be the one or the other it is necessary to ascertain the intent of the donor, the understanding of the parties, especially, where the contract is in writing and a consideration is to be paid, and also the character of the acts permitted to be done.

It is well settled that where the power or authority given is coupled with an interest, a license cannot be revoked at the will of the donor and may be assigned. *Travers v. Crane*, 15 Cal. 12; *Bourney v. Smith*, 17 Ill. 531; *Russell v. Hubbard*, 59 Ill. 335; *Miller v. State*, 39 Ind. 267; *Thompson v. McElarney*, 82 Pa. St. 174; *Thomas v. Sorrell*, Vaugh, 330.

The reason of this is that the donor has conferred, or the donee possessed some estate or interest, which depends on the continuance of the license, and which cannot be enjoyed if the license be withdrawn.

If therefore the smelting company, at the time of the erection of the improvements in question held possession of the land upon which they were constructed under a lease or by virtue of a license where its authority was coupled with an interest, then it was the owner of the land within the mechanics' lien act.

There is no question but that Norton the grantor of the smelting company held under a lease, although he was given the right to occupy the five acres of surface ground for a

specific purpose only—its use being restricted to the erection of "such buildings and machinery thereon as may be necessary for treating said slag dump." A critical examination of the contract between Norton and Holden warrants the conclusion, in our opinion, that its legal effect was to vest in Holden the same rights as to the use and occupancy of the premises described in the lease as Norton himself had subject only to its possible avoidance by the refusal of Norton's grantors to ratify it, which by the terms of the lease, they might have done. This appears also to have been the intent and purpose of the parties so far as we can gather from the instrument itself.

There is certainly ample ground to sustain this view, and in a case like the present it is the duty of the court to so hold. The laborers and material men, who contributed so largely to the improvement of the premises adding great value thereto by erecting costly buildings and putting expensive machinery thereon, should not be defeated of their right to a just compensation solely by a strained and technical construction of the instrument under which possession was held. As has been held by our supreme court, mechanics' lien statutes, and proceedings to enforce rights under them are in their nature equitable. Prior to the adoption of the code these rights were administered by the chancery side of the court and were of course governed by the rules of chancery practice. The code abolished forms of proceedings but did not abrogate the distinctive rules and principles applicable to legal and equitable rights and remedies as theretofore distinguished. *The San Juan, etc., Co. v. Finch*, 6 Colo. 214; *Cannon and Dounce v. Williams, supra.*

The premises were part of a mineral survey and the principal object both of the lease to Norton and of his contract with Holden was to secure the treatment of the slag dump thereon and the extraction of the precious metals therefrom. The right to occupy the surface ground not exceeding five acres in extent, was a mere incident thereto. It was given solely for the purpose of allowing free access to the dump

and for the erection of the buildings and machinery necessary to treat the ores when taken from the dump. By the contract between Norton and Holden the latter was given the exclusive right during the specific term fixed in the lease to erect upon the leased premises, the necessary works and machinery and to use the same during "the entire term of said lease and the extension thereof." He was also empowered to go upon the dump and remove the material therein for treatment. This comprised in substance all of the rights and privileges which Norton had under his lease.

The right of occupancy by Holden was for a fixed term and for a valuable consideration to be paid—a consideration of the same kind and character as that prescribed in the lease, to be paid by Norton. The contract therefore lacked the most essential elements of a bare license and possessed every requisite of a lease.

The grant to Holden, so long as he complied with the conditions of his agreement, was so far as Norton was concerned irrevocable. His right of possession could at no time have been defeated save by a declaration of forfeiture by Norton's lessors on the ground of his noncompliance with the conditions of his lease. It is true that the technical words generally used in a lease are not contained in the contract, but these are not necessary.

A tenancy may be created either by parol or by deed, and no particular form of expression or phraseology is essential in either case. Taylor, Landlord and Tenant, 26.

A title by occupancy alone under our statute is an interest in real estate and such an interest is assignable. *Gillett v. Caffney*, 3 Colo. 351; *Sears v. Taylor*, 4 Colo. 38; *Roseville, etc., Co. v. Iowa G. M. Co.*, 15 Colo. 31.

It is true also that by the terms of his lease, Norton was expressly prohibited from assigning the lease or any interest thereunder and from allowing any person not in privity with the parties to enter into or hold possession of the leased premises, without first obtaining the written assent of the lessors, and it is claimed, that this consent was not given to

the contract between Norton and Holden.  Be this as it may however, this is not a question which can be raised by the plaintiffs in error.  The original lessors or their assigns only could take advantage of it.

Every agreement is to be interpreted and construed with reference to the circumstances under which the parties contract.  The object of the owners of the land was to have the precious metals extracted from the slag in the dump, situate upon their mineral survey.  In order that this might be done it was necessary that the party undertaking it should have free ingress and egress to and from the dump, and should have the right to occupy so much of the adjacent ground as might be required for the erection of the necessary buildings and machinery to accomplish this purpose.  These rights were expressly granted to Norton, by him to Holden, and by Holden to the smelting company which finally agreed to undertake the work.  Holden, with the written consent of Norton, assigned to the smelting company, all of the rights which he acquired under the contract, and for the reasons above given the court concludes that, at the time of the erection of the improvements upon which plaintiffs claim a lien, the smelting company had such an interest in the land upon which they were constructed as to render it subject to a lien under the provisions of the mechanics' lien statutes.

The validity of the liens is also attacked on the ground of the insufficiency of the description of the land sought to be subjected to the liens, in the lien statements, complaint and decree.  Under the mechanics' lien statute, applicable to this case, the first step required to be taken by a lien claimant was to file, in the office of the clerk and recorder of the county in which the land was situated, a statement, which should contain among other things, " a description of the property to be charged therewith."  That this statement should be filed, and that it should contain a description of the property sought to be charged was absolutely essential to the creation of the lien.  There could none exist without it.  As to what should constitute a sufficient description

however, the authorities widely differ, and no uniform rule has been or can be established. The general rule laid down by the law writers and most commonly adopted by the courts including our supreme court is, that "if there is enough in the description in the lien notice to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty to the exclusion of others, it is sufficient." *Martin v. Simmons*, 11 Colo. 414; Phillips, Mechs.' Liens, 379.

It will be readily seen that in the application of this rule wide latitude is allowed, and it must depend in great measure upon the circumstances of each particular case. What would be sufficient in one would not be in another. In some a description by metes and bounds, or by reference to adjoining properties, or to the character of the buildings erected upon the premises and the business conducted thereon might be amply sufficient, whilst in others an accurate description by survey might be necessary. Phillips, Mechs.' Liens, 379–397 *a; Knabb's Appeal*, 10 Pa. St. 190; *Springer v. Keyser*, 6 Wharton (Pa.), 187; *Tibbetts v. Moore*, 28 Cal. 208; *Parker v. Bell*, 7 Gray (Mass.), 429; *Houston v. Meyers*, 88 Tex. 127.

The object of the requirement being, as it is universally held, to give notice to creditors of and purchasers from the owners of the property, it is permissible in determining the sufficiency of a description, to consider the interest of the parties to the suit and the rights to be affected. *Rall Bros v. McCrary*, 45 Mo. App. 365; *DeWitt v. Smith*, 63 Mo. 263.

The same rule of construction would certainly not apply in a case where the result affected the interest of an innocent purchaser for value, whose rights might have been prejudiced by a lack of full description, and one which affected only the interest of the owner whose land has been enhanced in value by the lien claimants and who is presumed to know its location. In this case neither the owners of the paramount title, their creditors nor any purchasers from

them are parties to the suit nor will their interests be affected by its determination. The only interest in the land which can pass at a sale under foreclosure of the mechanic's lien, would be that held by the smelting company. In either case, whether the instrument under which the company held, be termed a license or a lease, this estate would in effect be simply a right of occupancy subject to the terms, covenants and conditions of the lease to Norton, and of the contract between him and Holden.

In the statement filed by plaintiffs the land, upon which they claimed a lien, was described as "United States Survey, No. 158, California mining district, Lake county, Colorado, as the same is more particularly described in a certain conveyance made by Edward R. Holden to the Holden Smelting and Refining Company and recorded in the office of the clerk and recorder of Lake County, Colorado."

In Holden's conveyance, above referred to, he assigned to the company "that certain agreement made on December 30th, 1891, by Henry H. Norton of Leadville, Colorado, to the said first party, with reference to the slag dump and premises connected therewith on United States survey, No. 158, in California Gulch in California mining district, Lake county, Colorado." In the agreement between Norton and Holden, the premises are referred to as those leased to the former by Maxwell as trustee for the owners of the mineral survey, and in this lease they are described as the slag dump upon said survey No. 158, and five acres of the surface "for the purpose of erecting such buildings and machinery thereon as may be necessary for treating said slag dump, said five acres to be located contiguous and adjacent to said slag dump."

In the statement of the Williams Lumber Company the description is a "leasehold interest of five acres of ground adjacent to and adjoining what is known as the Omaha and Grant slag dump, upon the said United States survey No. 158 upon which leasehold estate the said smelter stands," etc.

In the Dimick statement the property sought to be subjected to lien is described as the smelting plant of the Holden

company, situate on said United States survey No. 158, and the estate, leasehold estate, right, title and interest of said company as in it vested, in the lands on which their said property is situate, to wit: said survey No. 158, and more particularly described in the conveyance of Holden to the smelting company.

Courts are reluctant to set aside a claim of mechanic's lien for looseness of description, and it is not necessary that the description shall be either full or precise. *McClintock v. Rush,* 63 Pa. 203.

A description that identifies is sufficient, though inaccurate. *Russell v. Hayden,* 40 Minn. 88.

The location and boundaries of Mineral survey No. 158, were matters of public record, and it cannot reasonably be claimed that the description in these statements of the premises, as being those adjacent to the slag dump upon which the Holden smelting plant had been erected and the same referred to in the conveyance by Holden to the company and in the lease to Norton, were insufficient to " enable one familiar with the locality to identify " them.

It is claimed, however, that the lien fails by reason of the fact that neither Norton, Holden, or the company had ever located, segregated or marked out the boundaries of the precise five acres which they had elected to take and occupy under the provisions of the lease.

The use of this surface ground was granted only for the purpose of furnishing a site for the buildings necessary to accomplish the main object of the lease, viz : the treatment of the material in the slag dump. It was a mere incident. The company was not authorized to explore for mineral and they could not use any of the surface except for the erection of the required improvements, and for ingress and egress. Five acres were specified as a limitation upon the amount of the surface which they might use. The spirit and intent of the lease and of the agreements based thereon, was simply to permit the lessees to occupy so much ground as might be required for necessary improvements not to exceed five acres.

They were not compelled to segregate the five acres or to use or occupy the whole of it. Indeed it may be well questioned whether they would have had the right to occupy or use any part of the five acres for any purpose other than that specified in the lease. We do not see upon what theory or reason a lien should fail solely upon the ground that the claimant in his statement described too large a tract of land, if the land properly subject to the lien was embraced in the tract described, especially where it does not appear that any innocent party has been misled and prejudiced thereby. *Mellor v. Valentine*, 3 Colo. 264; *Edwards v. Derrickson*, 4 Dutcher (N. J.), 39; *North Star, etc., Co. v. Strong*, 33 Minn. 1; *Smith v. Headley*, 33 Minn. 386; Phillips, Mechs.' Liens, 387; Boisot, Mechs.' Liens, 107.

In such case the lien would be held good upon whatever property belongs to the lot and curtilage, and is necessary to the enjoyment of the premises which is a question of fact. *Edwards v. Derrickson, supra.*

A selection and survey of the proper premises might be made under the direction of the court (*Rall Bros. v. McCrary, supra*), or, as in the present case, the foreclosure not affecting the ownership of the land, but only a right of occupancy, the buildings themselves, in the absence of a more definite description or segregation, would fix the amount and identity of the land subject to the lien.

For these reasons, and it appearing that the rights of the owners of said survey No. 158, are in no wise involved in and cannot be affected by the enforcement of these liens, nor those of any pretended creditor of, or purchaser from them we are of opinion that the description contained in these several lien statements is in sufficient compliance with the requirements of the statute. Even if there was a question as to this, the decree of the court describes with definiteness and certainty the land and interest therein sought to be subjected to the liens, and there is sufficient shown in the pleadings and evidence to sustain it.

Plaintiffs in error cite a large number of authorities in

support of their position on this point.    They are based how-
ever, upon a state of facts different from that of the case at
bar and differing from each other.    It should be remembered
too, that mechanics' liens are wholly creatures of statute,
which differ in the different states.    We know of no two in
which they are precisely alike.    The views which we have
expressed are in accord with the general principles which
control the construction of such statutes, as laid down by
the text writers, and upheld by the great weight of authority.

The contract under which plaintiffs claim to have per-
formed labor and furnished material was not in writing.    It
is urged by defendants that the contract was not a contin-
uous one, as required to sustain a lien under the statute and
the facts in this case, but that the labor was done and mate-
rial furnished under several separate and independent con-
tracts, and hence plaintiffs' failure to take the necessary steps
for asserting a lien upon the completion of each contract
worked a forfeiture of such privilege.    As to whether this
contention is sustained by the evidence it is unnecessary to
consider.    Section 30 of the mechanics' lien statute provides
that "In case the act of doing such work or of furnishing
such material shall be continuous, said lien shall attach as in
other cases, even though such work shall have been done, or
material shall have been furnished under two or more con-
tracts between the same parties."    General Statutes, 2147.

Admitting that there was more than one contract the facts
bring the case within the provisions of this section.

The acts of plaintiffs in performing labor and furnishing
materials, all tended to the accomplishment of one purpose
viz : the construction of a smelting plant, and were practi-
cally continuous.    All of the items in the account related to
one transaction and it was therefore a continuous account,
the right to initiate a lien for which, accrued from the date
of the last item.    *Lamb v. Hannerman*, 40 Iowa, 41 ; *Schmeid-
ing v. Ewing*, 57 Mo. 78.

The interruptions were infrequent and of no greater dura-
tion than is common in the erection of extensive improve-

ments.    No interval in the performance of labor or furnishing of material by plaintiffs seems to have exceeded fourteen days at any time.    There was no evidence of an abandonment of intention to prosecute the work, and construction was resumed without change of design.    In such case it has been held that an interval of even several months does not destroy the continuity of the work nor prevent the attaching of a lien for the commencement of the building.    *Manhattan Life Ins. Co. v. Paulison,* 28 N. J. Eq. 304.

Moreover the contract under which plaintiffs performed all work and labor and furnished all materials appear to have been treated by both parties to it as continuous and such was clearly their intention as shown by their acts and this should control.    *Fulton Iron Works v. North Center Creek M. & S. Co.,* 80 Mo. 265; *Costello v. Dale,* 1 Hun, 489.

Bills including both materials and labor were rendered by plaintiffs at the beginning of each month during the progress of the work, and were accepted and paid by the smelting company.    There was never any attempted segregation or application of the charges to separate contracts.

It is true that some few items in the account of plaintiffs were for repairs, but such repairs were of a slight character and were made during the progress of construction.    Our statute allows a lien for repairs as well as for construction, and when made under such circumstances as these, we see no reason for excluding the items therefor from the general construction account.    If during the progress of construction, some portion of the work finished or partially so but before the entire completion of the building should become broken, damaged, or be found unsuitable, the repairing of the same becomes a part of the work of construction.    This principle has been well expressed by the supreme court of Ohio in a case cited by plaintiffs in error.    " We do not, however, mean to say that where alterations and repairs are going on, at or about, the same time, the account must be divided. Nor that there must be a division where the alterations or repairs are made immediately after the erection so as to

plainly constitute but one account." *Choteau v. Thompson*, 2 Ohio St. 126.

If there were any doubt on this point, however, it had been definitely settled by the parties themselves. The items of charges for the few repairs made, were stated in the same account with the items for construction in various monthly statements, and were so accepted and paid by the smelting company.

It is claimed that the smelting plant upon which all of the mechanics' liens are asserted, was comprised of several structures such as the machinery building, pump house, and office, not under one roof or physically attached although adjacent to each other. There were also some sheds, ore platforms and a tramway constructed. It is urged therefore that even if the liens be valid each is restricted to the particular structure upon which the labor was done, and for which materials were furnished for which the lien is claimed.

It is alleged that McCarty & Moore did no work on the sheds or office, and furnished no materials therefor, and Dimick none on the office and that hence the decree is erroneous in giving the three claimants a joint lien on all the ground and all of the buildings and improvements thereon. Many apparently conflicting authorities can be cited as to this point, but we think that the true principle underlying all and which should control, is that where the several structures erected on a tract of land or lot are designed for a united enjoyment, the law treats them as a unit in relation to the liens which it gives. They are to be considered as constituent parts of a whole, incapable of separation without injury. An owner may see fit to have his kitchen not physically attached to his residence, although adjacent and upon the same tract. In such case it would be unreasonable to contend that the mechanic could have a lien only upon the latter for his labor in constructing it. This would practically amount to the denial of an absolute right given by statute. The kitchen alone would be valueless. It could be used only as an appurtenant to the residence, and as such

only would have value from which the mechanic could be reimbursed for his toil.

In the case at bar the object was to erect a plant consisting of the building and machinery necessary for the smelting of ores. Either from choice or necessity or both, some of the structures were physically separate, but all were essential component parts of the whole. The erection in which was contained the principal machinery, was useless and valueless without the pump house, and so with the office and with the tramway. Each was necessary to the accomplishment of the object sought by the improvements and in the purview of the statute did not become separate and distinct buildings simply because they were not physically attached and because it was seen fit to designate the several component parts by distinct names. *Small v. Foley, supra;* Phillips, Mechs.' Liens, 202; Boisot, Mechs.' Liens, 107; *Quimby v. Durgin,* 148 Mass. 105; *Lauman's Appeal,* 8 Pa. St. 478; *Salt Lake Lithographing Co. v. Ibex M. & G. Co.,* 49 Pac. Rep. (Utah) 768.

*Bevan v. Thackara,* 143 Pa. St. 196, cited by plaintiffs in error, is not applicable to the facts of this case. In that the lien claimant was a subcontractor, who asserted a lien for materials sold to a contractor and used in the construction of a dwelling and stable which were erected under separate written contracts. In his lien statement he entirely ignored the stable, made no mention of it whatever and claimed a lien solely for materials furnished for the dwelling. The court held that he had a right to include the stable in his claim, but as he had failed to do so, he could not include in his lien against the dwelling and recover for the materials furnished for the stable not included in the claim as filed. This was held to be true even though the whole of the lot upon which the house and stable stood was necessary for the ordinary and useful purposes of the dwelling, and that a sale under the lien thereon would carry the lot and all the improvements including the stable. In addition to this it must be conceded, that whilst the stable may have been a conven-

ient appurtenant to the dwelling it was not one necessary to its use and occupancy.

The case of *Dalles L. & M. Co. v. The Wasco Woolen Manufacturing Co. et al.*, 3 Or. 527, turned upon a statute entirely different from that in Colorado. It allowed a lien under a contract with the owner of the building. The contract was not required to be with the owner of the land, and the lien law was not based upon the principle that the mechanic and material man should have a prior lien for the increased value added to the premises by their labor and materials.

In *Larkins v. Blakeman*, 42 Conn. 292, cited by plaintiffs in error, there was a claim of lien upon two separate dwelling houses, and the use of one was in no wise dependent upon the other. The opinion in *Hill v. Braden*, 54 Ind. 73, was rendered upon a similar statement of facts.

The decree in the case at bar was not erroneous in this respect.

Another question raised and to be considered is whether or not the account of defendants in error, and for which a lien was claimed, embraces articles for which a lien will not lie. It is asserted that some of these were personal property, were not attached to the freehold and were not subject to a lien. The law of fixtures is applicable to a species of property which occupies the " border land " between real and personal property.

Formerly the controlling question in deciding on which side of the line of division an article belonged was : Is there a physical attachment to the realty of a nature indicating permanence? If there was it became a fixture. If not it was personal property and its disposition was governed by the law applicable to such property. It has always been a branch of the law presenting many difficulties, but this is especially true since in recent years the largely increased use of machinery in the business world has necessitated and brought about a relaxation and modification of the rigid rule which formerly prevailed. Now it is not absolutely necessary that in order to constitute a fixture, so as to take an

article from without the line of personal property, it should be permanently affixed to the freehold by physical attachment. This may or may not be the case. But this relaxation of the old rule increases the difficulties of the courts. " Where we compare a thing at the extremity of one class with a thing at the extremity of another, the difference is obvious, but when we approach the point of division, difficulty arises in discovering where the distinction should be drawn." Hill on Fixtures, 16; *The Ottumwa, etc., Co. v. Hawley*, 44 Iowa, 60.

The controlling questions now, in determining as to a large class of articles whether they partake of a real or personal character, are the intention of the party to make a permanent accession to the freehold, and the use to which the article is to be applied. *Roseville, etc., Co. v. Iowa G. M. Co. supra; Potter v. Cromwell*, 40 N. Y. 287; *Voorhees v. McGinnis*, 48 N. Y. 282; *Bank v. Kercheval*, 65 Mo. 686; *Curran v. Smith*, 37 Ill. App. 69; Boisot, Mechs.' Lien, 194.

If it constitutes a part of a plant of machinery necessary to the successful operation of the whole, or if its use is essential to the operation of some part of the machinery, which is physically attached to the freehold, then it may in many cases be properly termed a fixture, even though it wholly lacks a permanent physical attachment to the realty. The authorities are by no means uniform, however, and it is impossible to deduce from them and lay down any rule of universal application. Each case is one of mixed law and fact, and its solution depends to a large extent upon the particular circumstances connected with it. It must be considered too, that a very large number of the adjudications of this question arise in mechanics' lien cases, and involve the construction of special statutes which in no two states seem to be precisely alike in all particulars. The Colorado statute is among the broadest and most liberal as it expressly provides that the lien " shall attach to all machinery and other fixtures used in connection with any such lands, buildings or structures." Gen. Stats. 2148.

The word "other" preceding "fixtures" would seem to indicate, that for the purposes of the statute, all machinery used in connection with the land or building might have the character of fixtures. Upon this question, however, the court expresses no opinion, it not being necessary in deciding the case before us.

In this case the articles designated, for which it is claimed a lien will not lie, and which are included in the bill of defendants in error, are matte pots, forehearth or receiving hearth, and truax ore cars. The matte pots were large iron pots, weighing about eight hundred pounds each, mounted on wheels. They were placed under the spout of a receiving hearth and when filled with matte, were pulled out, emptied and returned. The forehearths were large heavy castings made into the shape of a box lined with fire brick. They were very heavy, weighing several tons each and were attached to the furnaces, but could be detached and moved, being on wheels, and there being a track for them to run on. Their use was to receive the matte and slag as it ran from the furnaces, the matte settling to the bottom and the slag rising to the top. They were allowed to remain in front of the furnaces, from thirty to sixty days at a time. The ore cars were used for hauling the slag to the incline. Each of these articles was necessary and essential to the successful operation of the smelting plant for the purposes for which it was intended. Each was a component part of the whole. The forehearth was necessary for receiving and separating the matte and slag, the matte pot for removing them and the cars for hauling the slag. A conveyance of the smelting plant, its appurtenances and fixtures would have carried with it all of these articles.

It has been held that a mechanic's lien on a brickyard attaches to small portable cars used for carrying brick therein. *Curran v. Smith, supra.* And so with boxes for hoisting coal. *Dobschnetz v. Holliday,* 82 Ill. 371.

Also with a heater and range, if put in by the owner with the apparent intention of making them fixtures. *Erdman*

v. *Moore*, 33 Atl. 958, N. J. L. 1896. And also with a factory bell and blower pipe. *Alvord, etc., Co. v. Gleason*, 36 Conn. 86.

Heating, laundry and cooking apparatus, including a large stock or soup kettle, furnished as a part of the original construction of a hotel as necessary for the use to which the building was to be applied, have been held subjects of a mechanic's lien. *Dimmick v. Cook & Co.*, 115 Pa. 573.

Scenery, seats and pulleys put in a theater create a lien on the house and lot in favor of the mechanic and the furnisher. *Halley v. Alloway*, 10 B. J. Lea, 523.

Mining cars are "material" and probably fixtures also. *Central Trust Co. v. Sheffield & B. Coal & I. Ry. Co.*, 42 Fed. Rep. 106.

At the time of the erection of the smelting plant in question, defendants in error were proprietors of the Excelsior Iron Works at Leadville, and were engaged in the manufacture and furnishing of all kinds of mining and milling supplies and machinery. They did a large amount of work upon the smelting plant and furnished among a large number of other articles, those claimed by plaintiffs in error to have been not subject to a lien. These were necessary and essential to the completion and operation of the works, the business of smelting could not have been successfully carried on without them, and we are of opinion that within the spirit and meaning of our mechanic's lien statute, a lien could be asserted therefor as was claimed.

We fully realize that some difficult questions arise in this case, but feel confident that our conclusions are in harmony with the spirit of the statute and with the general principles enunciated by the highest judicial authority of the state.

Holding these views we are of opinion that the decree rendered in this cause was not erroneous and should be affirmed.

*Affirmed.*